THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL JEAN-PIERRE, ) | |
| ) | |
| *Plaintiff*, ) | No. 25 C 7158 |
| v. ) | |
| ) | Chief Judge Virginia M. Kendall |
| DISCOVER BANK, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**OPINION AND ORDER**

Capital One, N.A., successor by merger to Defendant Discover Bank ("Discover") moves for an order compelling arbitration of Daniel Jean-Pierre's Fair Credit Reporting Act claim and accompanying state claims and an order staying this case pending arbitration. (Dkt. 7). For the below reasons, Discover's motion to compel arbitration and stay [7] is granted. Jean-Pierre's Motion to Strike Defendant's Attempt to Compel Arbitration [11] is denied. The remaining pending motions on the docket are denied as moot, [3], [9], [13], [15], [18], [21].

**BACKGROUND**

Daniel Jean-Pierre opened a credit card account with Discover on June 21, 2024. (Wantuch Decl., Dkt. 7-1 ¶ 4). Discover sent Jean-Pierre a physical credit card and an accompanying four-page Cardmember Agreement (the "Agreement"). (*Id.* ¶ 12; Cardmember Agreement, Dkt. 7-1 at 7–10). Its first provision states that Jean-Pierre's use of the account or failure to cancel the account within thirty days of receiving the card constitutes his acceptance of the Agreement. (*Id.* at 7).

1

Jean-Pierre activated his Discover card and used it to make purchases beginning on July 7, 2024. (*See* Dkt. 7-1- at 14). The Agreement also includes an arbitration clause, which states:

> In the event of a dispute between you and us arising out of or relating to this Account or the relationships resulting from this Account or any other dispute between you or us, including, for example, a dispute based on a federal or state statute or local ordinance ("Claim"), either you or we may choose to resolve the Claim by binding arbitration, as described below, instead of in court.

(Dkt. 7-1 at 9). Cardholders, however, can reject the standard arbitration clause if they send Discover an opt-out letter within thirty days of receiving their card or opening their account. (*Id.* at 10).

On April 30, 2025, Jean-Pierre filed a *pro se* Complaint against Discover in Cook County Small Claims Court. (Dkt. 1 at 56). He alleges Discover issued him a statement showing a $0 balance but subsequently reported a balance of $405 to various credit bureaus in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and in "breach of good faith." (*Id.* at 57). Jean-Pierre alleges that he has suffered emotional harm and reputational damage because of Discover's alleged inaccurate billing and false reporting. (*Id.*)

Discover reached out to Jean-Pierre to explore settlement on June 18, 2025—before it was served with the Complaint—but the parties could not reach an agreement. (Dkt. 41 at 3). On June 23, Discover was finally served. (Dkt 1 at 224). Two days later, Discover contacted Jean-Pierre to see if he would consent to arbitrating the dispute; Jean-Pierre declined and cited a provision of the Agreement that exempted actions filed in small claims court from arbitration. (Dkt. 32 at 57–58). The Agreement, however, further stipulates that claims originally brought in small claims court, but removed to a different court are subject to arbitration. (Dkt. 7-1 at 9). On June 26, 2025, the day after Jean-Pierre refused to arbitrate his claims, Discover removed the case to this Court

2

pursuant to 28 U.S.C. § 1441(a). (Dkt. 1 at 1–5). One week later, on July 3, 2025, Discover filed its Motion to Compel Arbitration. (Dkt. 7).

## DISCUSSION

United States district courts may compel arbitration under § 4 of the Federal Arbitration Act ("FAA") if three prerequisites are met: (1) there is a written agreement to arbitrate; (2) a dispute has arisen between the parties that falls within the scope of the arbitration agreement; and (3) one party refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); 9 U.S.C. § 4. "The FAA embodies a 'liberal federal policy favoring arbitration agreements.' " *James v. McDonald's Corp.*, 417 F.3d 672, 676–77 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). All doubts concerning arbitrability are resolved in favor of arbitration. *Id.*

Determining whether an enforceable arbitration agreement exists is a matter of state contract law. *Dr. Robert L. Meinders, D.C. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) ("In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts."). A contract's choice of law clause will govern questions of contract validity. *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007); *see also Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 n.4 (N.D. Ill. 2001). Here, the Agreement contains a Delaware choice-of-law provision. (Dkt. 7-1 at 9). And Delaware courts have held that a consumer's use of a credit card constitutes acceptance of a cardmember agreement. *See Grasso v. First USA Bank*, 713 A.2d 304, 308 (Del. Super. Ct. 1998). Based on Discover's mailing of the Agreement to Jean-Pierre, and Jean-Pierre's subsequent use of the card, there is a valid contract governing the parties' relationship, which includes the written arbitration clause. Moreover, the arbitration clause's

3

"arising out of" and "relating to" language is sufficiently broad to encompass Jean-Pierre's FCRA and breach of contract claims. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (recognizing a motion to compel arbitration should not be denied on grounds of scope unless it can be said that the clause is "not susceptible of an interpretation that covers the asserted dispute"). Finally, Jean-Pierre has unquestionably refused to arbitrate. Accordingly, all three of the prerequisites necessary for an order compelling arbitration have been met.

Jean-Pierre raises several separate arguments as to why the Court should deny Discover's motion. First, he submits that Discover implicitly waived its right to arbitrate by litigating in small claims court, engaging in preliminary settlement discussions, and removing this case to federal court. (Dkt. 11 at 2–3; Dkt. 32 at 5). A party may waive its right to enforce an otherwise valid arbitration clause if they "act[] inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 995 (7th Cir. 2011). For example, if a party litigates a case for months, receives voluminous discovery, and waits to file a motion to compel until just a handful of months before trial, it manifests an intent to litigate and thereby waives any right to arbitrate. *Cabintree of Wis., Inc. v. Kraftmaid*, 50 F.3d 388 (7th Cir. 1995). But "simply moving to dismiss" or filing a notice of removal, without more, is insufficient to find waiver. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008). Nor does engaging in preliminary settlement discussions amount to waiver or forfeiture. *See Huser v. Midland Funding, LLC*, 2019 WL 4393017, at *6–7 (N.D. Ill. Sept. 13, 2019).

The only two actions Discover took in this case that support Jean-Pierre's waiver argument are: (1) engaging in brief settlement discussions, and (2) filing its notice of removal. These acts,

4

alone or combined, do not amount to waiver.[1] First, it is perfectly appropriate for a party to attempt to privately settle a case before proceeding with more formal dispute resolution, either in court or before an arbitrator. "To hold otherwise would be to discourage private settlement by forcing a choice between settlement and arbitration that serves no useful purpose." *Huser*, 2019 WL 4393017 at *6. And turning toward Discover's removal, Jean-Pierre is incorrect that Discover waited until the "eve of trial" to remove the case and present its Motion to Compel Arbitration. (Dkt. 32 at 5). To the contrary, Discover filed its notice of removal just three days after being served with the Complaint and one day before an initial status hearing in small claims court. (Dkt. 1 at 1–5, 64, 224). Unlike cases involving prolonged periods of delay, the time between Discover's first pre-service contact with Jean-Pierre and filing its Motion to Compel Arbitration was a mere fifteen days. (Dkt. 41 at 3; Dkt. 7); *see Smith v. GC Servs. LP*, 907 F.3d 495, 499 (7th Cir. 2018) (recognizing "diligence or the lack thereof is particularly important" in considering whether a party waived its right to arbitrate). Further, Discover's removal of this case uniquely served to preserve its arbitration rights rather than undercut them considering the text of the arbitration clause provides that properly removed cases are subject to arbitration while those that remain in small claims court are not. (Dkt. 7-1 at 9). Considering the totality of the circumstances, Discover did not waive its right to arbitrate this dispute.[2]

Next, Jean-Pierre contends that he entered the Agreement as a 20-year-old college student with several documented disabilities—including autism spectrum disorder, generalized anxiety,

---

[1] The lone case Jean-Pierre cites, *Cabral v. Supple, LLC*, 2016 WL 1180143, says nothing of arbitration or waiver, raising significant concerns for the Court that it may be an A.I. hallucination. Recognizing Jean-Pierre's status as a *pro se* litigant, the Court warns him against citing any authority without personally verifying its authenticity.

[2] Jean-Pierre further claims Discover's settlement activity, notice of removal, and initial participation in litigation evidence "bad faith" and should preclude the company from forcing him into arbitration. (Dkt. 32 at 7–9, 11). But Jean-Pierre has not pointed to anything untoward about Discover's litigation conduct. Discover had a sound statutory basis for removal, *see* 28 U.S.C. § 1441(a); appears to have engaged in settlement discussions in good faith; and now simply moves to enforce a contract into which Jean-Pierre freely entered.

and an adjustment disorder—raising questions about his ability to meaningfully understand or agree to the terms of the Agreement. (Dkt. 32 at 10; Dkt. 30 ¶ 3). In essence, Jean-Pierre raises a lack of capacity defense, which "bears directly on the existence of an arbitration agreement." *Wilhelm v. A.g. Edwards & Sons, Inc.*, 2002 WL 1377568, at *4 (N.D. Ill. June 24, 2002); *cf. Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 597 (7th Cir. 2001) ("[A]s arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator."). "Learning disabilities and mental illnesses are not synonymous with mental incompetence," however. *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at *6 (N.D. Ill. Feb. 18, 2025). Under Delaware law, any person who is above the age of eighteen is presumed to have full capacity to contract barring a finding of legal incompetence. Del. Code Ann. tit. 6, § 2705 (West). Lack of contracting capacity will only be found if the party asserting incompetence demonstrates they were "incapable of understanding the nature and effect of the transaction," or were otherwise "unable to properly, intelligently and fairly protect and preserve [their] . . . rights." *G.A.S. v. S.I.S.*, 407 A.2d 253, 257 (Del. Fam. Ct. 1978); *see Husband (P. J. O.) v. Wife (L. O.)*, 418 A.2d 994, 995 (Del. 1980).

       Jean-Pierre has not met his burden of establishing incompetence. Although he undoubtedly suffers from several serious mental health conditions, his own submissions and *pro se* representation in this case establish that he has the capacity to read and write in English, understand a wide range of legal concepts, attend university, and even participate in study abroad programs. (*See generally* Dkt. 11; Dkt. 12; Dkt. 30; Dkt. 32; Dkt. 39). Indeed, Jean-Pierre does not even directly contend that he lacked the capacity to understand the nature and effect of the transaction into which he entered with Discover, but only that his health status "raises a genuine question whether Plaintiff could knowingly assent to waive critical constitutional rights." (Dkt. 32 at 10).

This sort of generalization is not enough considering the contradictory evidence in the record that plainly suggests Jean-Pierre has the requisite mental capacity to enter a contract.

To the extent Jean-Pierre raises a procedural unconscionability argument stemming from his mental capacity, it is similarly unavailing. There is nothing about the Agreement or its arbitration clause in particular that is that is "so difficulty to find, read, or understand" such that Jean-Pierre could not have known what he was assenting to. *See Rattunde v. Scores Chi. Gentleman's Club*, 2024 WL 4555336, at *6 (N.D. Ill. Oct. 23, 2024). Nor does the difference in bargaining power between the parties render the Agreement and its arbitration clause unconscionable. *Id.* at *5; *see also James v. Nat'l Fin., LLC*, 132 A.3d 799, 826 (Del. Ch. 2016). Again, Jean-Pierre's personal characteristics, even considering his mental health diagnoses, render him capable of reading and understanding basic legal terms. The arbitration clause is clear and direct, even including in all capital letters: "THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL." (Dkt. 7-1 at 9). And the clause includes a provision in all bold typeface outlining the cardholder's right to reject arbitration, and outlines the steps necessary to effectuate a rejection. (Dkt. 7-1 at 10). In summary, Jean-Pierre has failed to show anything about his personal characteristics or the Agreement and its terms that give rise to a claim of procedural unconscionability.[3]

Finally, the Court turns to Jean-Pierre's remaining claims that compelled arbitration is not appropriate because it would: (1) impose an unreasonable and prohibitive financial burden on him and (2) deprive him of adequate disability accommodations and protections that may, in turn, place

---

[3] Because Jean-Pierre does not make any arguments that implicate the doctrine of substantive unconscionability, which examines whether the terms of an agreement are "so extreme as to appear unconscionable according to the mores and business practices of the time and place," the Court does not address the doctrine. *James*, 132 A.3d at 815 (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 4580 (D.C. Cir. 1965)).

7

him at an increased risk of physical or mental harm. (Dkt. 32 at 10, 13–14; Dkt. 30) "A party seeking to invalidate an arbitration agreement must establish that the agreement precludes them from effectively 'vindicating [their] statutory cause of action in the arbitral forum.' " *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).

As far as arbitration costs are concerned, Jean-Pierre claims "private arbitration *may require* upfront filing fees, hearing costs, or travel that are impossible for [him] to bear." (Dkt. 32 at 13 (emphasis added)). But to resist arbitration on these grounds, Jean-Pierre is required to come forward with some "individualized evidence that [he] likely will face prohibitive costs." *Livingston*, 339 F.3d at 557. This he has not done. Such a "bare assertion of prohibitive costs, without more, is too speculative and insufficient to shift the burden to [Discover] to show how the costs are not prohibitive." *Id.* Moreover, Discover references a provision in the contract that specifically provides for an advancement of arbitration costs upon the consumer's request. (Dkt. 41 at 11; Dkt. 7-1 at 10).

Next, Jean-Pierre has not established that he will be deprived of disability accommodations in arbitration. The Court recognizes that Jean-Pierre has a documented history of experiencing mental health crises in response to high-stress situations and unpredictable environments, and it does not take these mental health concerns lightly. (Dkt. 30 ¶¶ 5–7). But Jean-Pierre's summary conclusion that arbitration fora lack oversight, structure, and any flexibility for people with documented disabilities is unsubstantiated and he can thus not avoid arbitration on these grounds. For example, Jean-Pierre does not cite to any of the American Arbitration Association ("AAA") rules, which govern the Agreement. Nor does he claim to have contacted AAA to inquire about accommodations that it may be able to provide to parties with disabilities. Discover, for its part,

8

has set forth myriad procedures built into the AAA's Consumer Rules that allow for virtual appearances and hearings along with streamlined discovery processes. (*See* Dkt. 41 at 12–13; Dkt. 41-1). Those Consumer Rules also set forth specific appeal rights that will be available to Jean-Pierre consistent the terms of the Agreement. (Dkt. 41-1 at 7). And Discover has represented to Jean-Pierre and the Court that it will consent to any reasonable accommodation requests he may make. (Dkt. 41 at 13). Indeed AAA, along with the International Centre for Dispute Resolution provides a dedicated model order for virtual hearings that Jean-Pierre can use to request specific accommodations to fit his unique circumstances. *See* American Arbitration Association, *AAA-ICDR Model Order and Procedures for a Virtual Hearing via Videoconference*, (2021), https://go.adr.org/rs/294-SFS-516/images/AAA270_AAA-ICDR%20Model%20Order%20and%20Procedures%20for%20a%20Virtual%20Hearing%20via%20Videoconference.pdf. In sum, Jean-Pierre has failed to establish that proceeding before an arbitrator will deprive him of necessary disability protections to guarantee his safety.

## CONCLUSION

For the foregoing reasons, the Court grants Discover's Motion to Compel Arbitration [7] and stays this case pending arbitration. Jean-Pierre's Motion to Strike Defendant's Attempt to Compel Arbitration [11] is denied. The remaining pending motions on the docket are denied as moot [3], [9], [13], [15], [18], [21].

_____
Virginia M. Kendall
United States District Judge

Date: October 6, 2025